UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-149-HRW

TRAVIS GORDON FAIR                                                                PLAINTIFF

VS:            **MEMORANDUM OPINION AND ORDER**

GARY BECKSTROM, ET AL.                                                         DEFENDANTS

Travis Gordon Fair, who is confined in the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky, has submitted a prisoner *pro se* civil rights action, pursuant to 42 U.S.C. §1983 [Record No. 3]. The plaintiff also filed an "Application to Proceed Without Prepayment of Fees" [Record No. 3]. The motion to proceed *in forma pauperis* will be addressed by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519

(1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). Under 28 U.S.C. §1915(e)(2), a district court can dismiss a case at any time if it determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges that the defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical needs. Specifically, he alleges that the defendants have ignored his pleas for different and/or better medical treatment, and for medication with which to treat his pain.

The plaintiff also appears to be asserting a claim of retaliation as the result of filing grievances regarding his medical condition. This claim would fall under the First Amendment of the United States Constitution.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that he suffers from a condition in his right shoulder which was caused from a 12-gauge shotgun wound. The plaintiff describes his condition as "osteomyelitis, and infectious inflammation of the bone and bone marrow." [Complaint Form, § IV] He explains that his shoulder is fused together with cadaver bone. He alleges that his condition is worsening and that his shoulder bones are beginning to separate and poke through his skin.

The plaintiff alleges that on October 1, 2006, he was examined by Dr. Ronald

Fleming, a doctor under contract with the LSCC. Plaintiff alleges that he showed Dr. Fleming his disfigured shoulder, explained that he was in pain and that he was having difficulty sleeping, and that he requested a prescription for antibiotics. He states that Dr. Fleming responded that he could do nothing for the problem, other than issue a slip confining the plaintiff to three days of total bed rest. The plaintiff complains that Dr. Fleming refused to prescribe him any antibiotics.

Plaintiff alleges that he returned to "medical" on a subsequent date but that "they" refused to see him. He returned to "medical." The plaintiff reports that this time, Nurse Black and two other nurses examined his shoulder and determined that it had seriously deteriorated. They issued him a shoulder sling and ordered him to avoid any strenuous activity for seven days.

Plaintiff states that the sling was inadequate to remedy his problems. He states that Donna Reed, Unit Administrator, and Nurse Black were concerned about his shoulder condition but felt that they could do nothing to assist him absent an order from Dr. Fleming. The plaintiff alleges that Dr. Fleming, by this time, had refused to see him on a follow-up basis. He claims that he filed one prison grievance (evidence of which he did not attach to his complaint) but that he did not pursue any additional grievance measures out fear of retaliation and intimidation at the hands of LSCC correctional officers. Plaintiff alleges that he was fired from his prison job because he told his shift dorm officer that his shoulder was worsening and that Nurse Black told him that he should not be working.

He alleges that LSCC staff threatened him with disciplinary action and possible segregation if he pursued any further grievance efforts. He also claims that he was "threatened by the Department of Corrections for seeking medical help." [Supplement to Complaint, p. "15D."] He states that "they [the Kentucky Department of Corrections ("KDOC")] see the problem and make constant suggestions as to seek the medical relief necessary to relieve pain and suffering." [*Id.*] He then states that the KDOC should do a better job of protecting inmates from "such brutal and inhumane acts as in now occurring here at this institution." [*Id.*]

### NAMED DEFENDANTS

The plaintiff has named the following defendants: (1) Gary Beckstrom, Warden of the LSCC; (2) Unknown Deputy Warden of the LSCC; (3) Dr. Ronald Fleming, physician at the LSCC; (4) Denise Black, nurse at the LSCC; (5) Rhonda Reed, Unit Administrator of the LSCC; and (5) the "Medical Staff/ Staff nurses" of the LSCC.

### RELIEF REQUESTED

Plaintiff seeks injunctive relief in the form of immediate medical attention.

### DISCUSSION

The Court is required to dismiss the plaintiff's complaint without prejudice. The plaintiff has not fully and completely exhausted his claims according to Kentucky Department of Corrections ("KDOC") regulations.

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust

administrative remedies before filing suit in the district court. 42 U.S.C.A. §1997e. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a) (2004).

The Supreme Court of the United States has twice examined the statute and held that it means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, the Sixth Circuit has repeatedly ruled that merely starting the administrative procedures is insufficient. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The plaintiff-prisoner has the burden of proving that a grievance has been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir.2002), and the prisoner must attach documentation to the complaint as proof. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998). Exhaustion is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir.1999), even if proceeding through the administrative system would be "futile." *Hartsfield v. Vidor*, 199 F.3d at 308-10.

The KDOC has promulgated a set of administrative regulations at 501 K.A.R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. CPP Number 14.6, entitled *Inmate Grievance Process*, explains the steps which state inmates are required to pursue in order to file a grievance.

CPP 14.6 §II (K) 1. - 3 sets forth the specific procedures which an inmate must utilize in order to grieve a health care concern. This regulation requires a state prisoner to first file an "Informal Resolution." [§ II (K)(1)(a) and (b) ("Step 1")] In this process, the Grievance Coordinator will refer the matter to the institutional chief medical authority, who then reviews the inmate's grievance [*Id.* at (b)]. If the institutional chief medical authority denies the prisoner's health care concern grievance, the prisoner must then seek formal review by the institution's "Health Care Grievance Committee." [§ II (K)(2)("Step 2")]

The Health Care Grievance Committee consists of three (3) licensed health care professionals appointed through the Department of Corrections Medical Director's Office. If unsuccessful there, the prisoner must then seek final administrative review of his grievance with the Medical Director of the Kentucky Department of Corrections [§ II (K)(3)("Step 3")]. Time frames for appeals and responses are established within this regulation.

Here, Plaintiff Fair alleges that he elected only to pursue his grievances through one level, and he did not even attach that effort to his complaint or explain it any detail. He alleges that several different individuals violated his Eighth Amendment rights, but he does not state about whom he complained in his grievance, when it was filed, or with whom. CPP. 14.6.1.a. (4) states that when filing a Health Care Grievance, an inmate "shall include **all aspects** of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1 (the Grievance and Informal Resolution Steps)." (Emphasis Added).

Plaintiff broadly alleges that the KDOC is aware of brutal and inhumane medical practices at the LSCC. The record contains no evidence that the plaintiff has in fact exhausted any of his medical claims through the KDOC's Medical Director, according to the provisions of CPP 14.6 § II (K).[1]

Even if the plaintiff had attached the initial grievance to which he referred (presumably the grievance seeking informal resolution), it would be inadequate to satisfy the KDOC's three-step exhaustion requirement. The plaintiff asks the Court to interfere with the internal administration of the LSCC medical staff absent any documentation which would demonstrate that he has brought his various claims to the KDOC's attention. The Court is simply not permitted to entertain §1983 claims unless they have been **fully and completely** exhausted. The plaintiff must exhaust each claim he has raised (and specify the conduct of each defendant whom he sues) through **all three** of the steps of CPP 14.6 § II (K).[2] One of the obvious benefits of requiring exhaustion is to provide a record for the

---

[1] As noted, the plaintiff has broadly alleged that the "*Department of Corrections*" threatened him in retaliation for seeking medical help. He provides no further information as to that claim.

[2] The plaintiff would also be required to file a grievance regarding his First Amendment retaliation claims. The **four-step** process for **non-health care** types of grievances is found in CPP 14.6 § II (J)(1)-(4). Under this process, an inmate must file a written grievance and seek an Informal Resolution (§ II (J)(1) (a) and (b) ("**Step 1**"). If not satisfied there, he must make a written request that the Grievance Committee hold a hearing to consider his grievance (§ II (J)(2) ("**Step 2**"). If not satisfied with the Grievance Committee's disposition, he may appeal to the Warden (§ II (J)(3) ("**Step 3**"). Finally, if not satisfied with the Warden's decision, an inmate may file an appeal to the KDOC (§ II (J)(4) ("**Step 4**"). Time frames for appeals and responses are established within the regulation.

court's review.  Because the plaintiff has not exhausted, this Court lacks a record and sufficient information for meaningful review.  The federal courts have also recognized that there are several additional reasons for the exhaustion requirement.  As stated by the Third Circuit in *Lyons v. United States Marshals*, 840 F.2d 202 (3rd Cir. 1988):

> The exhaustion requirement promotes:  (1) deference to Congress' decision that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact.

*Id.* at 205.  Because the plaintiff's failure to exhaust violates both the letter and underlying rationale for the law of exhaustion, his cause of action must be dismissed.

Finally, the Court emphasizes that the dismissal herein will be without prejudice to the plaintiff's filing a later lawsuit, should the prisoner develop medical evidence that specific actions or inactions by specific people have seriously impacted his health.  The Court believes that the plaintiff should undergo an independent examination by a qualified specialist so as to protect against a claim of medical indifference, or at the very least a written report from the contract physician.  If the claim of the plaintiff is true the condition may require surgical intervention, but the Court is left totally in the dark in this regard.  But the exhaustion doctrine precludes further activity at this stage of the proceedings.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     The §1983  complaint is **DISMISSED WITHOUT PREJUDICE**.

(2) Judgment shall be entered contemporaneously with this memorandum opinion in favor of the named defendants.

This November 13, 2006.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge